IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| John Hallom, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 C 2166 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Officer Bowens, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff John Hallom, formerly a pretrial detainee at the Cook County Jail, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff contends that Cook County Jail employee Officer Bowens violated his rights under the First Amendment by failing to accommodate his request to attend group Baptist religious services while he was in protective custody. Defendant's motion for summary judgment [35] is currently before the Court. For the reasons stated below, Defendant's motion for summary judgment is granted.

## I.    Northern District of Illinois Local Rule 56.1

When addressing a summary judgment motion, this Court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000).   Because Plaintiff is proceeding *pro se*, Defendant served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2 [38].   The notice explains the consequences of failing to properly respond to a motion for summary judgment and to the undisputed facts stated in movant's Local

Rule 56.1 Statement. (*Id.*) A litigant's failure to respond to a statement of fact in a Local Rule 56.1 Statement results in the statement being considered admitted. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

Consistent with this court's local rules, in support of his motion, Defendant filed a Local Rule 56.1(a)(3) Statement of Material Facts [36], citing evidentiary material in support of each statement. Plaintiff filed a five-paragraph response to the summary judgment motion [42]; however, he did not directly respond to Defendants Rule 56.1 statements of material fact. Some of the statements in Plaintiff's response cite to the record and, liberally construed, this pleading could be considered Plaintiff's Rule 56.1 response. However, Plaintiff's response does not specifically address the statements in Defendant's Rule 56.1 Statement. See Local Rule 56.1(b)(3)(B) (an opposing party's response to a Rule 56.1 statement must include "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon").

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Ibid.* (citing N.D. Ill. R. 56.1(b)(3)(B)).

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"). Accordingly, the Court will consider Defendant's Rule 56.1 statements, to the extent they are supported by the record, admitted. See N.D. Ill. L.R. 56. 1 (b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also Raymond*, 442 F.3d at 608. The Court notes that, even if it considered Plaintiff's response as a proper response in accordance with Rule 56.1(b)(3)(B), the record still establishes that Defendant is entitled to summary judgment.

## II. Facts

The following facts are set forth as favorably to Plaintiff as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). Plaintiff was a pre-trial detainee at the Cook County Department of Corrections ("CCDOC") from October, 2015 to March, 2017. (Dkt. 36, ¶ 1.) Plaintiff was housed in protective custody, in Division 6, from October 9, 2015 through January 15, 2017. (*Id*.) Plaintiff was housed in Division 3 Annex of the CCDOC beginning on January 15, 2017, and remained there until March 30, 2017. (*Id*.) Defendant Officer Bowens is a Correctional Officer of the Cook County Department of Corrections. (*Id*. at ¶ 2.)

Plaintiff filed his amended complaint on July 3, 2017, alleging violations of 42 U.S.C. § 1983 of the Civil Rights Act against Defendant Bowens. (*Id*. at ¶ 3.) In his Complaint, Plaintiff alleges that he was not able to attend Baptist church services in a chapel while he was housed in Division 3 Annex. (*Id*. at ¶ 4.)

Division 3 Annex houses a number of different inmate populations and gangs, including rival gangs, which requires a certain number of security measures including disciplinary segregation, protective custody, and special incarceration units. (*Id*. at ¶ 5.) At the time of the allegations, Plaintiff voluntarily requested to be placed in protective custody. (*Id*. at ¶ 6.) In Division 3 Annex, Plaintiff had access to religious request slips where he could request to see a minister should one come to the area. (*Id*. at ¶ 7.) Plaintiff completed two request slips and a grievance seeking access to Baptist services while in protective custody. (*Id*.) Plaintiff testified that he wished to go to church and worship with people "from the outside." (*Id*.)

At the Cook County Jail, Baptist instruction and guidance are provided by volunteers from the Baptist community. (*Id*. at ¶ 8.) The volunteers are not employees of the Cook County Sheriff's Office or the CCDOC employees. (*Id*.) The volunteers must be screened to ensure the safety of inmates and staff, and only screened volunteers can enter the CCDOC to conduct services. (*Id*. at ¶ 9.)

The CCDOC provides the detainees with the ability to practice their religion as freely as possible consistent with the operational requirements and safety concerns of the correctional institution. (*Id*. at ¶ 10.) Division 3 Annex staff allows any minister, who is otherwise in compliance with security regulations, to meet with a detainee and to hold religious services. (*Id*. at ¶ 11.)

From January 2017, through March 2017, Division 3 Annex detainees did not have access to a Baptist volunteer or to Baptist services because no volunteer was available. (*Id*. at ¶ 12.) In spite of unavailability of Baptist volunteers, Plaintiff was able to practice his faith with his Bible, which he was able to keep with him at all times; through prayers; and through group prayers provided the group did not pose security concerns. (*Id*. at ¶ 13.)

Plaintiff was aware that the religious services were provided by volunteers. (*Id*. at ¶ 14.) Plaintiff received an inmate handbook, which states that religious services are provided by clergy on a volunteer basis and are not guaranteed. (*Id*. at ¶ 15.) Plaintiff also spoke to a religious leader who identified herself as a volunteer. (*Id*. at ¶ 16.)

Plaintiff also knew that Defendant Bowens was not in charge of the religious services in his tier and, accordingly, never handed her a grievance. (*Id*. at ¶ 17.) Plaintiff admitted that Defendant Bowens never personally, or physically, prevented him from attending any chapel services. (*Id*. at ¶ 18.) Plaintiff's interaction with Defendant Bowens was limited to one question. (*Id*. at ¶ 19.) Plaintiff saw Defendant Bowens standing in the hallway and shouted that "he would like to attend religious services[,]" to which she replied "sign out of PC." (*Id*.)

Plaintiff, during his deposition, suggested that the Cook County Jail should have "clear[ed] out the hallway" and allow[ed] him to go to church in a different area of the CCDOC; however, this alternative poses significant risks. (*Id*. at ¶ 20.) Religious services held away from detainee tiers require increased staffing because they involve escorting detainees from their tier to a different location in the jail, may involve the inter-mixing of detainees from different tiers whose personal histories and affiliations may be unknown, and require special attention to the security of the civilian volunteer providing the service. (*Id*. at ¶ 21.)

Plaintiff never requested to be reclassified to a different security level or to sign out of protective custody, which could have resulted in a transfer to a different area of the jail. (*Id*. at ¶ 22.) Plaintiff handed in a grievance on March 12, 2017, and received a response to his grievance on March 30, 2017. (*Id*. at ¶ 23.) The CCDOC response stated that "the County Corrections does not provide any religious services. The CCDOC does not prohibit any detainee from fellowship or worship. All religious services are provided by volunteers. CCDOC does not mandate services from individual or group volunteering. Volunteers express interest in working with particular detainees population and within certain divisions. [Plaintiff's request] has been forwarded to the visiting volunteer chaplains to facilitate a service for detainees in protective custody." (*Id*.) Plaintiff did not appeal that response as he was transferred to IDOC on April 1, 2017. (*Id*.)

## III. Legal Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

Parties seeking summary judgment have the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the moving parties demonstrate the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

## IV. Discussion

The Court allowed Plaintiff to proceed with a First Amendment claim for violation of right to free exercise of religion against Defendant Bowens. For the following reasons, Defendant is entitled to summary judgment as to the First Amendment claim.

Plaintiff's claims concerning his religious rights arise under the free exercise clause of the First Amendment. Inmates' First Amendment rights are "subject to limits appropriate to the nature of prison life" so "[r]estrictions are permissible if they are reasonably related to legitimate penological objectives." *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). To survive summary judgment as to his First Amendment claims, Plaintiff must identify evidence suggesting that Defendants "personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016). Courts consider four factors when reviewing whether restrictions on access to religious services and other opportunities are justifiable: (1) whether there is a valid and rational connection between the regulation prohibiting access and a legitimate governmental interest to justify it; (2) whether there are alternative means

7

of exercising the right to practice religion that remain open to inmates; (3) whether accommodation of the right to practice would have a significant impact on prison staff or other inmates; and (4) whether the regulation reasonably allows inmates to avail themselves of available alternatives. *Turner v. Safley*, 482 U.S. 78 (1987). In turn, "[a] substantial burden 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thompson*, 809 F.3d at 379-80 (quoting *Thomas v. Review Bd.,* 450 U.S. 707, 717-18 (1981)).

The record demonstrates that CCDOC provides opportunities for communal religious worship consistent with operational and security concerns and based on the availability of approved volunteers. During the time period that Plaintiff was held in Division 3 Annex, no Baptist volunteer minister was available for that Division. Transferring Plaintiff to a different cellhouse to participate in group worship would have impaired prison security by requiring additional staffing and mixing inmates from different tiers and security levels. This is particularly true in the case of Plaintiff, who had requested protective custody. "The law is clear that there is no absolute right to being able to attend group religious services; legitimate penological interests can take precedence over such a right." *Buck v. Lake County Sheriff*, No. 03 C 1740, 2004 U.S. Dist. LEXIS 25880, 2004 WL 2983966, *8 (N.D. Ill. Dec. 3, 2004) (Gottschall, J.); *accord, Sloan v. Lesza*, No. 95 C 0445, 1997 U.S. Dist. LEXIS 7255, 1997 WL 289870, *4 (N.D. Ill. May 19, 1997) (Shadur, J.); *Hadi v. Horn*, 830 F.2d 779 (7th Cir. 1987) (prison administrators cancelled Muslim services when Muslim chaplain was unavailable to lead them; administrators could forbid inmates from leading the services). Nothing in the record suggests that the security or staffing concerns asserted by Defendant were pretextual, the unavailability of Baptist volunteers was attributable to Defendant, or "the security measures were applied in a

discriminatory manner, affecting only Baptist inmates." *Walker v. Dart*, No 09 C 1752, 2010 U.S. Dist. LEXIS 85230, at *29 (N.D. Ill. August 19, 2010) (Holderman, J.) Thus, it is clear that Defendant satisfies the first prong of the *Turner* test.

The record also makes clear that Plaintiff was able to otherwise practice his faith through individual prayer, group prayer, and through reading his Bible, which he had access to at all times during his sixty day stay in Division 3 Annex. Consequently, the only aspect of his religion that was temporarily curtailed was group religious services led by a Baptist minister. *See, e.g., Grant v. DeTella*, No. 96 C 2727, 1999 U.S. Dist. LEXIS 16208, 1999 WL 966988, at *4 (N.D. Ill. Oct. 06, 1999) (Pallmeyer, J.) (where inmate was confined to his cell for his own protection, prayer in his cell rather than through communal worship was constitutionally acceptable).

The third prong of the *Turner* test asks whether accommodation would have a significant impact on prison staff or other inmates. *Turner*, 482 U.S. at 90. The record indicates that Plaintiff's request that he be transported to another tier would require a strain on available staff and would require the intermixing of inmates of unknown affiliations and personal histories and require special attention to security for the civilian volunteer providing the service. Accordingly, the evidence shows that there would be significant impact on the correctional staff, other inmates, and civilian volunteers providing religious services.

Finally, there was no ready alternative to the Jail's policy of relying on volunteer religious leaders to provide services to detainees, and under *Turner* and the facts contained in the record, none was required. *See McRoy v. Cook County Dept. of Corrections*, 366 F. Supp. 2d 662 (N.D. Ill. 2005), *aff'd* 205 Fed. Appx. 462 (7th Cir. 2006), *cert. denied*, 552 U.S. 1027, 128 S. Ct. 624,

169 L. Ed. 2d 402 (2007); *see also Johnson v. McCann,* No. 08 C 4684, 2010 U.S. Dist. LEXIS 51998, 2010 WL 2104640, *1 (N.D. Ill. May 21, 2010) (Norgle, J.).

For all of these reasons, there is no triable issue of material fact as to Plaintiff's religious services claim and Defendant is entitled to summary judgment. Accordingly, the Court need not reach their fallback argument about qualified immunity. Additionally, although Defendant argues that she is entitled to summary judgment on any claim Plaintiff may have under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000(cc), the Court dismissed any such claim in its initial review order, pursuant to screening under 28 U.S.C. § 1915A [14]. Thus any RLUIPA analysis of Plaintiff's claim is unnecessary.

Accordingly, Defendant's motion for summary judgment is granted. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If he appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed another "strike" under 28 U.S.C. § 1915(g). If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon.

*See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

IV. **Conclusion**

For the above reasons, Defendant's motion for summary judgment [35] is granted and this case is dismissed. The Clerk is directed to enter final judgment in favor of Defendant.

ENTER:

_____
SHARON JOHNSON COLEMAN, Judge
United States District Court

DATE: 7/31/2018